UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY SABOL-KRUTZ,

    Plaintiff,

v.

QUAD ELECTRONICS, INC.,

    Defendant.

                                                 /

Case No. 15-13328

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [10]**

    On January 26, 2015, Plaintiff filed this breach of contract/employment action in the United States District Court for the Eastern District of California. The California court declined to hear Plaintiff's primary claim for declaratory relief—invoking the doctrine of abstention—and the parties agreed to transfer the matter to this Court pursuant to 28 U.S.C. § 1404(a) as the more convenient forum. Plaintiff has since amended her complaint and added several substantive claims under California law. In essence, Plaintiff asserts that she was wrongfully terminated under the guise of a failed drug test and is owed over $1 million in unpaid commissions.

    Currently before the Court is Defendant's motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56(c). Defendant's challenge boils down to two procedural questions: First, whether Plaintiff has satisfied the $75,000 amount-in-controversy requirement for purposes of establishing diversity jurisdiction and, if so, whether California or Michigan law applies to the state law claims pled in Plaintiff's complaint.

For the reasons stated more fully below, the Court DENIES Defendant's motion to dismiss. (Dkt. 10).

**I.     BACKGROUND**

Plaintiff Stacey Sabol-Krutz ("Sabol") worked as an account executive selling electrical components at Defendant Quad Electronics ("Quad") from early 2008 to late 2014. (Am. Compl. ¶ 6-9).  After spending approximately three years in Quad's Michigan office, Sabol maintains that she "moved to California to essentially run [their] West coast operations." (*Id.* at ¶ 7).  While Quad asserts that the reason for Sabol's move was "so that her daughter would not have to pay non-resident college tuition", (Def.'s Mot. Tomica Aff. ¶ 4, Ex. 3), there is seemingly no dispute that the vast majority of Sabol's sales—before and after the move—concerned accounts outside the state of California.  Sabol has continued to reside in California ever since. (Plf.'s Resp. 6).

According to the complaint, throughout the course of Sabol's employment she was subjected to a number of sexually inappropriate comments from her supervisor, Daniel Tomica. *See* (Am. Compl. ¶ 11).  While it is unclear when—and to whom—Sabol reported Tomica's allegedly improper behavior, "on August 20, 2014, Defendant terminated Plaintiff for a positive hair follicle drug test."  (Am. Compl. ¶ 15).  Notwithstanding the positive drug test, Sabol contends that she was fired "in retaliation for her reports of *inter alia* sexual harassment under the pretext of . . . drug use." (*Id.* at ¶ 16). Following Sabol's termination, a flurry of litigation was commenced by both parties.

On January 26, 2015, Sabol filed an action in the United States District Court for the Eastern District of California ("California Court") "seeking a declaration that the Non-Compete Agreement [she executed with Quad] was invalid[,] and monetary damages for

2

unpaid commissions earned during the course of her employment." *Sabol Krutz v. Quad Elecs., Inc.*, No. 2:15-CV-00201, 2015 WL 4095584, at *1 (E.D. Cal. July 7, 2015). Less than three weeks later, Quad filed a complaint for injunctive relief in Oakland County Circuit Court, Michigan, to prevent Sabol from working at Great Lakes Wire and Cable; a direct competitor of Quad that was one of nineteen companies specifically identified in Sabol's non-compete agreement. (Def.'s Mot. Oakland County Complaint, Ex. 9).

While the outcome of the Oakland County action is unknown, on July 7, 2015, the California Court issued an order denying Quad's motion to dismiss for lack of subject matter jurisdiction, reasoning that "[i]n the present case, there is no demonstrated contractual limit to Plaintiff's recovery, nor is there any substantive legal rule that limits her potential damages to less than $75,000." *Sabol-Krutz,* 2015 WL 4095584, at *4.[1] The California Court further denied Sabol's motion for partial summary judgment on her claim for declaratory relief, finding that (1) "since the contractual agreement was entered into in Michigan for work at a Michigan-based company, Michigan law should apply", and (2) because the Michigan courts sit "in a better position to adjudicate the reasonableness of the [non-compete] Agreement under Michigan law . . . this Court abstains from interfering with that process." *Id.* at *8.[2] Plaintiff has since abandoned her argument that the non-compete agreement should be invalidated.

---

[1] For reasons unknown, Quad attempts to reassert this argument here as though the California Court never addressed it.

[2] Worthy of note, the California Court expressed no opinion regarding the appropriate state law to be applied to Sabol's breach of contract claim for lost commissions.

In light of the California Court's decision that Sabol's non-compete agreement is governed under Michigan law, the parties agreed to transfer the case to this Court. *See* (Dkt. 2, Stip.). Sabol has since amended her complaint and added six new claims against Quad, four of which (Counts II, III, IV, and VII) are premised under the California Labor Code. Against this backdrop the Court endeavors to address Quad's procedural challenges to Sabol's complaint.

## II. ANALYSIS

Quad's motion rests on two procedural grounds, Fed R. Civ. P. 12(b)(1) and 12(b)(6). The Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Where subject matter jurisdiction is challenged in a 12(b)(1) motion, it is the plaintiff's burden to prove jurisdiction. *Id.*

### A. Subject Matter Jurisdiction

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 327 (6th Cir. 2007) (citations and internal quotations omitted); *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Where, as here, the factual basis for subject matter jurisdiction is challenged, "no presumptive truthfulness attaches to plaintiffs allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134

(6th Cir. 1996). In doing so, the Court has wide discretion to consider affidavits and documents outside the complaint. *Id.* Consideration of documents outside the pleadings does not convert the Rule 12(b)(1) motion into a Rule 56 motion. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915–16 (6th Cir. 1986).

Quad's subject matter jurisdiction argument is fairly straightforward: because Sabol is purportedly unable to satisfy the $75,000 amount-in-controversy threshold for diversity actions, this Court is prohibited from entertaining her complaint. But the California Court explicitly considered and rejected this challenge for a multitude of reasons; chief among them: Sabol "contends that she is still owed the substantial sum of $1,138,152 . . . [and has supplied] specific accounts with corresponding commissions . . . . " in support of this assertion. *Sabol-Krutz,* 2015 WL 4095584, at *4. Morever, Sabol has since amended her complaint and added six additional claims. In this way, the amount-in-controversy has only increased since the California Court's decision finding that there was no merit to this argument. And, conceptually, the Sixth Circuit subscribes to the same rationale employed by the Ninth Circuit—and relied upon by the California Court—to assess jurisdictional challenges in this context. Indeed, "[i]t is well-settled that if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (citation and quotations omitted). A showing of bad faith is made if the defendant demonstrates "to a legal certainty that the original claim was really for less than the amount-in-controversy requirement." *Id.*

5

Here, Quad maintains that Sabol is unable to satisfy the $75,000 damages threshold because she is not entitled to commissions on the accounts listed in her affidavit. (Def.'s Mot. 14). But adopting Quad's position would require the Court to find, as a matter of law, that Sabol played no role in the procurement of the accounts leading to the sales in question- a factual issue that is hotly debated. Furthermore, Quad ignores the potential damages stemming from Sabol's six other counts. At a minimum, then, as the California Court concluded, "there is no concrete measure of damages, based on the pleadings, that this Court could divine at this stage of the case." *Sabol-Krutz,* 2015 WL 4095584, at *4. For those reasons, the Court must, and does, DENY Quad's request to dismiss this matter under Rule 12(b)(1).

### B.  Choice of Law

In the alternative, Quad argues that Sabol's California state law claims—Counts II, III, IV, and VII—must be dismissed because "Michigan law applies to the matters asserted in [the] complaint . . . . (Def.'s Mot. 16). This argument misapprehends a long line of Supreme Court precedent dating back to *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Indeed, where, as here, "a case heard in diversity is transferred from one federal district court to another as a change of venue, the substantive law of the forum in which the plaintiff initially filed . . . continues as the governing law following the transfer . . . . " *Whal v. General Elec. Co.*, 786 F.3d 491 (6th Cir. 2015). The reason for this is clear: "[t]here is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). While the Court has acknowledged that this

policy might "seem too generous because it allows the [plaintiff] to have both [his] choice of law and [his] choice of forum," *Ferens v. John Deere Co.*, 494 U.S. 516, 531, 110 S. Ct. 1274, 1284, 108 L. Ed. 2d 443 (1990),"[a] plaintiff always can sue in the favorable state court or sue in diversity and not seek a transfer." *Id.* at 525. In this way, applying "the Erie policy analysis to § 1404(a), [ensures] that the accident of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court that could not have been achieved in the courts of the state where the action was filed." *Id.* at 524 (quotations omitted).

Similarly here, Sabol originally filed suit in the Eastern District of California. The parties then agreed to transfer the matter to this Court pursuant to 28 U.S.C. § 1404(a). (Dkt. 2). Under *Ferens* and *Wahl,* the substantive law of the transferor forum "travels with the case." *In re Dow Corning Corp.*, 778 F.3d 545, 550 (6th Cir. 2015) ("The principles of practicality and fairness that animate the rule of *Van Dusen* and *Ferens* are equally applicable to personal injury and wrongful death cases originally brought in diversity but transferred . . . after the defendant filed for bankruptcy. In bankruptcy, just as in diversity, state substantive law defines the parties' underlying rights and obligations."). Accordingly, Sabol's California state law claims are properly before this Court. For that same reason, the Court likewise rejects Quad's request to dismiss Count VIII-—wrongful termination—on the basis that it "cannot be sustained as it is not actionable under Michigan common law or statute." (Def.'s Mot. 20). While Count VIII may very well lack merit under California law, that argument is not before the Court. As such, the Court DENIES Quad's request to dismiss Sabol's state law claims.

## III. Conclusion

For the reasons thus stated, the Court DENIES Defendant's motion to dismiss the complaint. [10]

SO ORDERED.

       S/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: April 27, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 27, 2016, by electronic and/or ordinary mail.

       S/Carol J. Bethel
       Case Manager